UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| MARVA L. THOMPSON | * | CIVIL ACTION NO. 16-1246 |
|---|---|---|
| VERSUS | * | JUDGE ROBERT G. JAMES |
| NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Marva Thompson protectively filed the instant application for Title II Disability Insurance Benefits on September 18, 2013. (Tr. 118-120, 16). She alleged disability as of September 15, 2011, because of carpal tunnel syndrome, sleep apnea, high blood pressure, diabetes, high cholesterol, "TIA" (transient ischemic attack), and vitamin D deficiency. (Tr. 134, 146). The state agency denied the claims at the initial stage of the administrative process. (Tr. 64-74). Thereafter, Thompson requested and received an August 4, 2014, hearing before an Administrative Law Judge ("ALJ"). (Tr. 30-63). However, in a March 24, 2015, written decision, the ALJ determined that Thompson was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to past relevant work, or alternatively at step five, that she could make an adjustment to work that exists

in substantial numbers in the national economy. (Tr. 13-26). Thompson sought review of the adverse decision before the Appeals Council. On July 2, 2016, however, the Appeals Council denied Thompson's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On August 31, 2016, Thompson filed the instant complaint for judicial review. She asserted four assignments of error in her brief, which are aggregated and succinctly restated, as follows:

(1) for various reasons, the ALJ's residual functional capacity assessment is not supported by substantial evidence;

(2) the Appeals Council committed reversible error by failing to remand the matter for consideration of newly submitted evidence; and

(3) the ALJ legally erred in her step four and alternative step five findings because her hypothetical was premised upon her unsupported residual functional capacity assessment.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

3

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

**I. Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 18). At step two, she found that the claimant suffered severe impairments of diabetes mellitus, history of transient ischemic attack, hypertension, and obstructive sleep apnea. (Tr. 18-19).[1] She concluded,

---

[1] She determined that the claimant's medically determinable impairment of hyperlipidemia was non-severe. *Id*. Furthermore, the claimant's right carpal tunnel syndrome was diagnosed after the date she was last insured for benefits, and thus not a medically determinable impairment. *Id*.

4

however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 19-20).

## II.     Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[2] except that she was limited to frequent reaching, handling, and fingering. *See* Tr. 20-23.

## III.    Steps Four and Five

At step four, the ALJ employed a vocational expert ("VE") to find that the claimant was able to return to her past relevant work as: 1) a daycare or nursery school attendant as that job generally is performed in the national economy, and 2) an underwriter for an insurance company, both as she actually performed that job and as it is generally performed in the national economy. (Tr. 23-24).[3]

---

   [2] Light work entails:
>   . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

   [3] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

The ALJ also proceeded to make an alternative step five finding. At this step, the ALJ determined that the claimant was an individual "closely approaching advanced age," on the date last insured. (Tr. 24-25). She also had a limited or high school education, with the ability to communicate in English. *Id*. Transferability of skills was immaterial. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.11, 202.12, 202.14, or 202.15, Table 2, Appendix 2, Subpart P, Regulations No. 4. *Id*. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for light work. *Id*. In response, the VE identified the representative jobs of election clerk – sedentary, *Dictionary of Occupational Titles* ("DOT") Code # 205.367-030; call out operator – sedentary, DOT 237.367-014, and furniture rental clerk – light, DOT 295.357-018, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 25, 59).[4]

## Analysis

I.  **Residual Functional Capacity Assessment**

   a)  <u>Non-Exhaustive Chronology of Relevant Medical Evidence</u>

The court pauses to recognize that the relevant period in this case extends from September 15, 2011 – the date that plaintiff's alleged disability began – through December 30,

---

[4] The VE responded that for the election clerk job, there were 15,070 positions available nationally and 203 jobs in Louisiana. (Tr. 25, 59). For the call out operator job, there were 8,229 positions nationally and 266 jobs in Louisiana. *Id*. For the furniture rental clerk job, there were 50,759 jobs nationally, and 602 positions in Louisiana. *Id*. This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

2011 – the date that plaintiff was last insured for Title II disability benefits. *See* Tr. 16, 186.[5] Stated differently, plaintiff must establish that she was disabled prior to December 30, 2011.

*i)     Evidence before the ALJ*

On June 22, 2010, Thompson went to the emergency room with complaints of right hand numbness, headache, right side facial numbness, and right arm weakness. (Tr. 291-292, 304-307). She was hospitalized with diagnoses of cerebral vascular accident ("CVA"), acute; arterial hypertension; headache; diabetes mellitus; obstructive sleep apnea; obesity; and dyslipidemia with low HDL. *Id*.

On June 23, 2010, Thompson was seen by Ming Hung, M.D., for physical and rehabilitation consultation. (Tr. 310-312). Upon examination, Thompson had good motor strength on the left side, but her right lower extremity had 3+/5 strength. *Id*. She was able to "heel-to-shin," more discord on the right than the left. *Id*. She was able to pose all digits on the right hand, but had decreased rapid finger tapping compared to the left. *Id*. Her right upper extremity strength was 3/5. *Id*. Dr. Hung diagnosed mobility and functional impairment status post-apparent cerebrovascular accident with right hemiparesis; hypertension; diabetes mellitus; obesity; sleep apnea with CPAP; and prior transient ischemic attack. *Id*. Her treatment plan called for improvement of right hand fine motor control and coordination. *Id*.

On June 24, 2010, Thompson was discharged from the hospital with diagnoses of right arm numbness; arterial hypertension, uncontrolled; headache; diabetes mellitus, type II; obstructive sleep apnea; obesity; dyslipidemia; possible transient ischemic attack; and brachial neuritis. (Tr. 315-316).

---

[5] However, the Commissioner generally will develop the claimant's medical history for at least 12 months preceding the month that the claimant filed her application. 20 C.F.R. § 404.1512(b)(1).

On September 4, 2010, Thompson was examined by Robert Miller, M.D., for complaints of a cough. (Tr. 205). Miller diagnosed cough, diabetes mellitus type II, and hypercholesterolemia. *Id*.

On October 1, 2010, Thompson went to the emergency room with complaints of chest pain. (Tr. 208-210). The physician recommended that she be admitted to rule out heart disease, but Thompson declined. *Id*. She believed that it was anxiety or a panic attack. *Id*.

On March 15, 2011, Thompson was seen by Surander Singhal, M.D., for complaints of headache for the past week. (Tr. 326-328). Neurologically, she was intact. *Id*. Singhal diagnosed hypertension. *Id*.

On March 16, 2011, Thompson went to the emergency room with complaints of high blood pressure for the past few days and mild headache for one day. (Tr. 295-296). She had no numbness or tingling. *Id*. She was diagnosed with CVA, hypertension, and migraine. *Id*.

On March 17, 2011, Thompson went to the emergency room for follow-up stemming from intermittent right-sided posterior headaches and occasional neck pain for the past one to two weeks. (Tr. 222-223). She had no numbness, weakness, or TIA symptoms. *Id*. Dr. Miller diagnosed cervicalgia, likely cervical strain, hypertension, and type II diabetes mellitus. *Id*.

On March 20, 2011, Thompson returned to the emergency room with complaints of headaches for the past two weeks. (Tr. 226-228). She reported that her headaches were better when her blood pressure was better, but they never completely resolved since onset. *Id*. Review of systems was negative. *Id*. The physician diagnosed hypertension and headaches. *Id*.

On April 21, 2011, Thompson was seen by Amy Blair, M.D. for complaints of tingling in her hands and feet for the past two weeks. (Tr. 230-233). Thompson also complained of elevated heart rate. *Id*. Blair diagnosed numbness, diabetes, and hypertension. *Id*. She

8

prescribed stocking and glove distribution. *Id*.

A February 8, 2012, chest x-ray was normal. (Tr. 249).

On August 8, 2013, Thompson was seen by Rolf Morstead, M.D., for complaints of right hand pain, numbness, and tingling for the past three months. (Tr. 247-248). The condition had progressively worsened. *Id*. Nerve conduction studies of the right upper extremity revealed a right median neuropathy at, or about the wrist consistent with carpal tunnel syndrome of moderate severity. *Id*.

On September 6, 2013, Thompson saw T. Qayyum, M.D., concerning disability. (Tr. 262).

In a July 14, 2014, letter addressed to Disability Insurance, Amy Blair, M.D., wrote that Thompson was a former patient of hers last seen in 2011. (Tr. 330). At that time, Blair followed Thompson for hyperlipidemia; essential hypertension, benign; diabetes mellitus without complications, type II; history of TIA; and obstructive sleep apnea. *Id*.

ii)   *Evidence before the Appeals Council*

On October 8, 2015, Dr. Blair completed an attorney-supplied medical statement regarding physical abilities and limitations for social security disability claim – shorter form. (Tr. 359-360). She noted diagnoses for TIA – 2004, 2010; diabetes mellitus II, with neuropathy - 2000; memory impairment; obstructive sleep apnea; and edema – 2015. *Id*. Blair opined that Thompson could stand and sit for no more than 30 minutes at a time, but work a total of no hours in a workday. *Id*. She occasionally and frequently could lift ten pounds. *Id*. She also could occasionally manipulate her right and left hands. *Id*. However, she needed to frequently elevate her legs during an eight hour workday. *Id*. She also suffered from moderate pain. *Id*. Blair noted that edema was a new diagnosis managed by a new physician. *Id*.

9

b) <u>Discussion</u>

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence *inter alia* because the record is devoid of any medical source statement that addresses the effects of her impairments. Plaintiff is correct that, at the time of the ALJ's decision, no physician of record (examining or non-examining) had considered plaintiff's impairments and quantified their effects upon her ability to perform work-related activities for the relevant period. However, the absence of a medical source statement does not, in itself, render the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). Rather, in such a situation, the court focuses upon whether the ALJ's decision is supported by substantial evidence in the record. *Id*.

In *Ripley*, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley, supra*. The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's RFC for work even at the sedentary level because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. In addition, the ALJ purported to ground plaintiff's RFC upon Ripley's activities of daily living. *Id*., at n. 28. In so doing, however, the ALJ failed to recognize Ripley's testimony to the contrary. *Id*. In the end, the only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's RFC. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that supports the ALJ's RFC. In an effort to support the RFC, the ALJ recited plaintiff's medical records, noted impairment with her ability to lift, carry, reach,

and conduct finger movements, but then simply concluded that they were accounted for by the ALJ's own autonomously-derived RFC. (Tr. 21-22). The ALJ also cited plaintiff's activities of daily living, but, without explanation, gave short shrift to plaintiff's difficulty with buttons. (Tr. 22).

The ALJ further noted that, despite plaintiff's impairments, she managed to work through 2010 and 2011, with the help of a hired assistant. (Tr. 22). However, plaintiff does not allege disability until *after* she shut the business down. Also, the ALJ's RFC does not include the need for a hired assistant to perform plaintiff's work.

In any event, plaintiff testified that towards the end of her employment, she had turned all of the work over to her assistant because plaintiff was physically incapable of performing the work. (Tr. 42-45). Thereafter, plaintiff had to shut the business down because her assistant ran into problems of her own. *Id*. Plaintiff's hearing testimony also does not support the ALJ's RFC. *See* Tr. 36-39.

Citing this court's decision in *James v. Astrue*, the Commissioner argues that the absence of a medical source statement does not compel remand per se. *James v. Astrue*, No. 11-2129, 2013 WL 443846 (W.D. La. Jan. 17, 2013), R&R adopted, (W.D. La. Feb. 5, 2013). The court agrees. However, *James* is distinguishable, because James's RFC was supported by his own testimony, albeit at a lesser included exertional level. *See James, supra*.[6]

---

[6] Here, plaintiff's testimony arguably supports an exertional capacity for sedentary work, reduced by the ability to only occasionally reach, handle, and finger. *See* Tr. 35, 40-41, 162. However, even an RFC for a limited range of sedentary work is inconsistent with the demands of Thompson's past relevant work, both as generally and actually performed. *See* Tr. 59, 169-170. Furthermore, although the VE identified some alternative jobs at the sedentary exertional level with occasional reaching, handling, and fingering, the court is not able to rely on that evidence to sustain the ALJ's decision because it is not known whether Thompson had any transferrable skills. If she does not have transferrable skills, then the medical-vocational guidelines suggest that she would "grid out" before reaching vocational expert testimony. *See e.g.*, Rule 201.10,

The Commissioner also cites other district court decisions from this circuit which apparently did not remand because of the lack of a medical source statement. Be that as it may, and without delving into the particulars of each of those decisions, it is manifest that this court is obliged to follow the decisions of the Fifth Circuit. As recently as 2009, the court again explained that

> [i]n *Ripley,* we held that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions. *See Ripley,* 67 F.3d at 557.

*Williams v. Astrue*, 355 Fed. Appx. 828, 832 n.6 (5th Cir.2009).

In sum, on the present record, the court is constrained to find that the ALJ's RFC is not supported by substantial evidence. *Williams, supra*; *Ripley, supra*; *see also Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

**II.    Steps Four and Five**

Because the foundation for the ALJ's step four, and alternative step five, decision was premised upon an RFC that is not supported by substantial evidence, the court further finds that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence. Remand is required.[7]

**<u>Conclusion</u>**

For the above-stated reasons,

---

Table 1, Appendix 1, Subpart P, Regulations No. 4.

[7] The court need not consider plaintiff's additional arguments. These issues may be addressed upon remand.

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 18th day of August 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE