UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARVA L. THOMPSON** | **CIV. ACTION NO. 3:16-01246** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a petition for an attorney's fees award pursuant to 42 U.S.C. § 406(b) [doc. # 26], as amended [doc. # 33] filed by Alex W. Rankin, attorney for Plaintiff Marva Thompson. The Commissioner filed a response stating that she declined to take a position on the reasonableness of the petition but provided information to assist the court in its determination. (Gov.'t Response [doc. # 35]).[1] As detailed below, it is recommended that the motion be GRANTED IN PART and DENIED IN PART.

### Background and Timeline

On August 31, 2016, Marva Thompson ("Thompson"), who was/is represented by attorney Alex W. Rankin in this matter, filed the instant complaint for review of the Commissioner's denial of social security disability benefits. On October 4, 2017, the District Court entered judgment reversing and remanding the matter to the Commissioner for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Oct. 4, 2017 Judgment

---

[1] Although the Commissioner has no direct financial interest in the § 406(b) award, she acts as a trustee on behalf of the claimant. *Gisbrecht v. Barnhart*, 535 U.S. 789, 798, n 6, 122 S.Ct. 1817 (2002).

[doc. # 21]).  On November 29, 2017, Thompson filed a petition for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA Fee Petition"), which resulted in a December 11, 2017 stipulated order awarding Thompson EAJA fees in the amount of $6,815.36, including $7.86 in expenses, plus $40.80 in costs.  (Stip. Order [doc. # 25]).

Almost five years later, on October 29, 2022, the Commissioner issued a Notice of Award advising Thompson that she was entitled to disability benefits beginning September 2012. (Notice of Award; Exh. 2 to Petition/Amend. Petition [doc. #s 26-2 & 33-2]).  The Notice further stated that Thompson's first payment for sums due her through October 2022 was $101,865.93.  *Id*.

On November 14, 2022, Thompson's attorney, Alex W. Rankin,[2] filed the instant petition for an attorney fee pursuant to 42 U.S.C. § 406(b) (sometimes referred to herein as "406(b) Fee Petition").  He seeks to recover a § 406(b) award of $23,340.00, which he calculated by multiplying the number of hours that he and his brief writer, Sarah Bohr, expended on this case in federal court, i.e., 38.9 hours, by his customary, non-contingent, hourly rate of $300, and then upwardly adjusting the product by a multiplier of 2.0, for an effective hourly rate of $600.  The requested $23,340 fee award represents 22.9% of Thompson's past due benefits award.

On November 25, 2022, Thompson, via attorney, Alex Rankin, filed an amended 406(b) Fee Petition that substantially tracks the initial motion.  [doc. # 33].  In support of the § 406(b) petition, as amended, counsel submitted a "Retainer Contract and/or Assignment of Interest and Contract of Employment under the Provisions of R.S. 37:318 [sic] and R.S. 9:5001" ("Retainer

---

[2]  Plaintiff's attorney is the real party in interest for purposes of the instant motion.  *Gisbrecht*, 535 U.S. at 798, n.6.

2

Contract") executed by Thompson and Alex W. Rankin on August 31, 2016.  (Retainer Contract; Amend. 406(b) Fee Petition, Exh. 1 [doc. # 33-1]).  The Retainer Contract provides, in pertinent part, that,

> [a]s a consideration for legal services rendered, Client agrees that Attorneys shall receive any legally allowable award for attorney's fees under the provisions of appropriate statutes and jurisprudence of the United States, concerning representation of claimants in Social Security Disability/SSI cases, to include Equal Access to Justice attorney fee recoveries.   In the event that client's claim for benefits is reversed and/or remanded by a federal court, claimant specifically authorizes attorneys to petition for, receive and deposit attorney's fees under the Equal Access to Justice Act . . .
>
> Client understands and agrees that the attorney's charges for this work on an hourly basis, should an hourly rate of pay be determined appropriate, is $300.00 per hour.

*Id*.

Counsel also submitted an "Attorney Fee Contract" (hereinafter, "2018 Contract") that was executed by Thompson and Alex Rankin on February 5, 2018, and, which reads, in pertinent part,

> [t]his attorney fee contract covers only fees for representation of me before the Social Security Administration, through the Administrative Law Judge hearing. If my representation includes proceedings before the Appeals Council or before a federal court, followed by a favorable outcome, I will pay a fee equal to 25% of any past due benefits resulting from my claim, without limitations to the maximum amount in the preceding paragraphs of this agreement.

(2018 Contract; Amend. 406(b) Fee Petition, Exh. 3 [doc. # 33-3]).

In further support of the 406(b) Fee Petition, as amended, Mr. Rankin submitted an affidavit averring that he has been an attorney for over 50 years, and that he bills his clients at the rate of $300.00 per hour.  (Rankin Affidavit; Amend. 406(b) Fee Petition, Exh. [doc. # 33-6]). Ms. Bohr also submitted a declaration stating that she has been engaged in the active practice of law in Florida for over 40 years and that her current, non-contingent hourly rate is $550 per hour.

3

(Bohr Decl.; Amend. 406(b) Fee Petition, Exh. [doc. # 33-7]).  Finally, movant submitted an affidavit from Monroe attorney, James Rountree, who averred that he has been practicing in this area for 50 years, and that his hourly rate is 300.00.  (J. Rountree Affidavit; Amend. 406(b) Fee Petition, Exh. [doc. # 33-8]).

The matter is ripe.

## Law and Analysis

In *Bowen v. Galbreath*, the Supreme Court observed that,

> [u]ntil 1965, Title II [of the Social Security Act] contained no provision expressly authorizing a district court to award fees to a claimant's attorney. In 1965, however, the Court of Appeals for the Fifth Circuit held that 42 U.S.C. § 405(g) implicitly authorized district courts to order the payment of attorney's fees out of past-due benefits.  *See Celebrezze v. Sparks,* 342 F.2d 286 (1965) . . . Later in 1965, Congress effectively codified *Sparks* by adding a new subsection (b)(1) to 42 U.S.C. § 406 that allows withholding of past-due benefits to pay attorney's fees incurred in judicial proceedings under Title II.

*Bowen v. Galbreath*, 485 U.S. 74, 75–76; 108 S.Ct. 892, 893–94 (1988).  The "new" subsection (b)(1) provides that

> [w]henever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C.§ 406(b)(1).

One of the purposes behind Congress's 1965 amendment was to protect claimants from attorneys who charged inordinately large fees for representing them in court.  *Gisbrecht v. Barnhart*, 535 U.S. 789, 799–805; 122 S.Ct. 1817, 1824–27 (2002).  However,

> nothing in the text or history of § 406(b) reveals a "desig[n] to prohibit or discourage attorneys and claimants from entering into contingent fee agreements." Given the prevalence of contingent-fee agreements between attorneys and Social

4

>Security claimants, it is unlikely that Congress, simply by prescribing "reasonable fees," meant to outlaw, rather than to contain, such agreements.

*Id*. (internal citation omitted). In addition, Congress, via the 1965 amendment to § 406(b), did not intend to install a lodestar method of awarding reasonable fees because that mechanism did not gain traction until a decade later within the specific context of resolving disputes over the amount of fees shifted to the loser in litigation. *Id*. (citation omitted).

In *Gisbrecht v. Barnhart*, the Supreme Court remarked that in Social Security disability appeals, attorneys and clients enter into contingent-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled." *Gisbrecht, supra* (citations omitted). In fact, according to the National Organization of Social Security Claimants' Representatives, "virtually every attorney" representing Title II disability claimants includes in his/her retainer agreement a provision calling for a fee equal to 25% of the past-due benefits award. *Id*.

The Supreme Court ultimately concluded that § 406(b) did not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security claimants in federal court. *Gisbrecht*, 535 U.S. at 806–07; 122 S.Ct. at 1827–28. Instead, "§ 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id*. Within the 25 percent ceiling set by Congress, "the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." *Id*.

Attorney fees may be reduced based upon the character of the representation, the results achieved, delay by the attorney, or if the benefits are large in comparison to the amount of time spent on the case. *Gisbrecht*, 535 U.S. at 808, 122 S.Ct. at 1828. In its assessment of the reasonableness of the fee prescribed by the fee agreement, the court may require the attorney to

submit a record of the number of hours that he or she expended on the case and his or her normal hourly billing charge in noncontingent fee cases. *Id.*

In *Jeter v. Astrue*, the Fifth Circuit examined *Gisbrecht* and concluded that lower courts are not precluded from considering the lodestar (the number of hours reasonably expended by the attorney in the case multiplied by his reasonable hourly fee) in their 406(b) fee determinations. *Jeter v. Astrue*, 622 F.3d 371(5th Cir. 2010). The court explained that

> where lower courts look to the lodestar method to evaluate the ratio of fee earned to number of hours expended, they cannot find that a particular fee award would result in a windfall unless the court can articulate additional, specific factors to demonstrate that the resulting high fee was unearned by the attorney - and thus not attributable to the attorney's representation of the client before the court.

*Id.*

Although the Fifth Circuit declined to prescribe an exhaustive list of factors that lower courts should consider when determining whether a particular fee is unearned, the court did cite some factors considered by other courts, including, risk of loss in the representation, attorney experience, percentage of the past-due benefits the fee constitutes, value of the case to the claimant, degree of difficulty, and whether the client consents to the fee. *Id.*

## Analysis

**I.     Timeliness**

A motion for attorney's fees under § 406(b) is governed by Federal Rule of Civil Procedure 54(d)(2) which provides that the motion for fees must be filed no later than 14 days after entry of judgment "unless otherwise provided by statute or order of the court." *Pierce v. Barnhart*, 440 F.3d 657, 663-664 (5th Cir. 2006); FED. R. CIV. P. 54(d)(2). Paradoxically, however, a § 406(b) fee motion is not available until after a favorable award is issued by the Commissioner, which, as in this case, may not occur until months or even years following

remand.

The SSA's Notice of Award adduced in this case is dated October 29, 2022, and someone handwrote thereon that it was received on 2 November 2022. [doc. # 26-2]. Thompson's attorney filed the instant motion 12 days after his apparent receipt of the Notice of Award. Therefore, the petition arguably is timely. Even if it were not, the court finds that counsel has satisfied the "excusable neglect" exception set forth in Federal Rule of Civil Procedure 6(b)(1)(B).

**II.    Reasonableness**

The *Gisbrecht* Court instructed lower courts to accord primacy to the contingency fee agreement between the attorney and the client. *Jeter*, 622 F.3d at 379 (citation omitted). Here, the Retainer Contract that was in effect when Mr. Rankin and Ms. Bohr represented Thompson before this court in 2016-2017 did not authorize her attorneys to recover a contingency fee *as a percentage* of any past due benefits received by Thompson. *See* Retainer Contract.[3]  This self-evident conclusion is highlighted and contrasted by the 2018 Contract executed by Rankin and his client wherein Thompson explicitly agreed to a fee equal to 25 percent of any past due benefits should representation include proceedings before the Appeals Council or before a federal court. *See* 2018 Contract. The 2018 Contract is inapplicable here, however, because it contemplated a subsequent return to federal court that, courtesy of the Commissioner's favorable disability determination on remand, never materialized. *Id*. Furthermore, an after-the-fact

---

[3] For whatever reason, it appears that, at least until 2018, Mr. Rankin did not regularly include a provision in his standard retainer agreement authorizing him to receive a percentage of his client's past due benefits for work that he performed on their behalf in federal court. *See, e.g.*, Retainer Contract [doc. # 33-1]; *Owen v. Colvin*, Civ. Action No. 12-1179 (W.D. La.) (Retainer Contract [doc. # 15-1]).

contingency agreement is of no effect. *See Thomas v. Astrue*, 359 Fed. App'x. 968, 973 (11th Cir. 2010); (it is "like placing a bet on the winning thoroughbred after he gallops across the finish line"); *Capers v. Kijakazi*, Civ. Action No. 16-1360 (W.D. La.).

Apparently conceding that they are not entitled to a fee under § 406(b) measured as a percentage of their client's past due benefits award, Mr. Rankin and Ms. Bohr seek fees calculated using an enhanced lodestar method: 38.9 hours of work multiplied by an hourly non-contingent hourly rate of $300, and then adjusted upward by a 2.0 multiplier, to produce a net fee award of $23,340.00.[4] Indeed, under these circumstances, several courts have applied the traditional lodestar method or a "blended approach" that includes the lodestar and consideration of the *Gisbrecht* principles. *See Paula K. v. Saul*, Civ. Action No. 15-0084, 2019 WL 6497430, at *2–3 (W.D. Va. Dec. 3, 2019) (awarding the lodestar); *Mounce v. Colvin*, Civ. Action No. 10-0560, 2016 WL 4444710, at *2–3 (D.N.H. Aug. 23, 2016) (doubling the lodestar); *Iskra v. Comm'r of Soc. Sec.*, Civ. Action No. 19-0973, 2022 WL 2373746, at *1 (W.D. Mich. June 15, 2022), *R&R adopted,* 2022 WL 2355409 (W.D. Mich. June 30, 2022) (awarding fees based on the lodestar, using an hourly rate of $250 derived from State Bar of Michigan's median rates).[5]

---

[4] Shortly before Mr. Rankin and Ms. Bohr filed the instant 406(b) petition, this court disapproved of their attempt to seek a 406(b) award in another case in which they had endeavored to support the application via a post-award declaration signed by their client. *See Capers supra.* They have taken a different approach here.

[5] It could be argued that the Fifth Circuit decision in *Sparks, supra*, provides some authority for simply awarding fees of 20 percent of past-due benefits. *See Sparks v. Celebrezze,* 228 F. Supp. 508, 510 (E.D. Tex.1964), aff'd, 342 F.2d 286 (5th Cir. 1965) (district court awarded attorney's fees to the claimant's attorney "in the amount of twenty (20%) per cent of the claimant's accrued, total recovery, not on the basis of any employment contract that may or may not have existed between claimant and his attorney, but solely on the basis of the reasonable value of legal services rendered."). However, the Rules of Professional Conduct now require contingency fee agreements to be in writing and to state how they are calculated. *See* LA. RULES OF PROF'L CONDUCT 1.5(c) and *Capers, supra*. Moreover, in the absence of a valid contingency fee agreement, the lodestar method has become predominant. *See* discussion, *supra*.

Applying the foregoing considerations here, the court observes that the Retainer Contract between Mr. Rankin and his client calls for an hourly rate of $300.00 "should an hourly rate of pay be determined appropriate." (Retainer Contract). While Mr. Rankin has adduced evidence to show that other attorneys in this area with his experience charge $300 per hour, another preeminent local attorney, Thomas Hayes, had an hourly rate of $250.00 as recently as 2021. *See CFS Fin. Servs. Inc. v. Car Sols. of Monroe Inc.*, Civ. Action No. 20-1646, 2021 WL 4310605, at *2 (W.D. La. Aug. 4, 2021). Furthermore, Mr. Rankin and Ms. Bohr worked on this case in the 2016-2017 timeframe, which was well before the recent inflation surge. Accordingly, the court finds that the $300 contracted hourly rate was on the high end for attorneys in this area, especially in 2017.

Mr. Rankin and Ms. Bohr also seek to recover fees premised upon 38.9 hours of work before this court. Again, however, this number of hours is on the high end, which appears to stem from Mr. Rankin and Ms. Bohr's practice of submitting briefs that regularly exceed the court's page limit. Nonetheless, this court already has approved a stipulated EAJA fee award premised upon 38.9 hours of work in this case and declines to reduce it here.

Accordingly, application of the lodestar produces a fee of $11,670 ($300 per hour x 38.9 hours of work). Counsel urge the court to double or "enhance" this sum by utilizing some of the *Gisbrecht* considerations, i.e., the results obtained, character of the representation, and the risk of litigation loss. However, the *Gisbrecht* considerations were implemented as a check on the reasonableness of an attorney fee award that was calculated as a percentage of past-due benefits. It is not apparent that the considerations may be used to *enhance* the lodestar when the attorney did not include a contingency fee as a percentage of past due benefits in his or her retainer contract. Indeed, here, Mr. Rankin and his client agreed to an hourly rate of $300.

9

In any event, application of the *Gisbrecht* factors does not warrant modification of the lodestar in this case. While Mr. Rankin and Ms. Bohr's success before this court ultimately led to a past-due benefits award of over $100,000, plus future benefits, most every such post-remand finding of disability will result in long-term benefits for the client and a significant past-due benefits award that is calculated based on the number of years it took to prevail. Furthermore, while the briefs in this case were, as always, well-written and thorough, Mr. Rankin and Ms. Bohr's representation did not entail any unique or extraordinary issues in this case. Ultimately, this court's reversal and remand was premised upon the relatively straightforward observation that there was no medical source statement to support the ALJ's residual functional capacity assessment. *See* R&R and Judgment [doc. #s 20-21].

Finally, Mr. Rankin and Ms. Bohr emphasize that they endured a substantial risk of litigation loss in accepting this case. Consequently, they urge the court to apply a multiplier of at least three based on nationwide statistics regarding the difficulty of winning Social Security cases in federal court and then upon remand. However, Mr. Rankin apparently was willing to take this case without a significant risk multiplier because he drafted and executed the Retainer Contract with his client. The court is reluctant to assess a risk multiplier when Mr. Rankin did not think that the case necessitated one in the first instance. After all, the lack of a risk multiplier in his contract certainly did not dissuade him from taking the case. Moreover, given the generous hourly rate and number of hours claimed, the lodestar already includes some enhancement for risk, character of representation, and results obtained.

In sum, the undersigned finds that the lodestar of $11,670 based on the hourly rate set forth in the Retainer Contract multiplied by the healthy number of hours expended on the routine issues in this appeal, i.e., $300 per hour x 38.9 hours of work, yields a fee that is reasonable for

the services rendered.

### III. Obligation to Remit Smaller Fee

When a court grants contingency fees under § 406(b), the same statute makes it a crime for an attorney to "charge[ ], demand[ ], receive[ ], or collect[ ] for services rendered in connection with proceedings before a court . . . any amount in excess of that allowed by the court." *Rice v. Astrue*, 609 F.3d 831, 835–36 (5th Cir. 2010) (quoting 42 U.S.C. § 406(b)(2)). In other words, an attorney who receives a § 406(b) fee is prohibited from also seeking to collect a fee awarded under the EAJA. *Id*.

In 1985, however, Congress passed an uncodified amendment to § 206(b) of the EAJA, clarifying that "no violation of law occurs 'if, where the claimant's attorney receives fees for the same work under both [42 U.S.C. § 406(b) and 28 U.S.C. § 2412(d)], the claimant's attorney refunds to the claimant the amount of the smaller fee." *Astrue v. Ratliff*, 560 U.S. 586, 595; 130 S.Ct. 2521, 2528 (2010) (quoted source omitted).

Here, the court previously awarded EAJA fees to Thompson in the amount of $6,815.36. Therefore, Thompson's attorney is required to refund to the claimant the smaller of the two fees.

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the petition for an attorney's fees award pursuant to 42 U.S.C. § 406(b) [doc. # 26], as amended [doc. # 33] filed by Alex W. Rankin, attorney for Plaintiff Marva Thompson be GRANTED IN PART and DENIED IN PART, and that Plaintiff's counsel, Alex W. Rankin, be awarded the sum of $11,670.00, subject to counsel's obligation to refund to the client the EAJA fee award received by counsel in this matter.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have

11

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 1st day of May, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE